NITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 21-cr-520 (TNM) |
| | ) | |
| v. | ) | VIOLATION: 18 U.S.C. § 1349 |
| | ) | (Conspiracy to Commit Wire Fraud) |
| | ) | |
| CANDACE PRICE and | ) | |
| SANDRA WALDEN, | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States, by and through its undersigned attorney, and CANDACE PRICE ("PRICE"), with the concurrence of her attorney, stipulate and agree that the following facts fairly and accurately describe her conduct in the offense to which she is pleading guilty. These facts do not constitute all of the facts known to the parties concerning the charged offense and related conduct. This statement is being submitted to demonstrate that sufficient facts exist to establish that PRICE committed the offense to which she is pleading guilty. PRICE knowingly, voluntarily, and truthfully admits to the facts set forth below.

At all times relevant to the Information filed in this matter:

### Background

1. The Department of Veterans Affairs ("VA"), an agency of the United States, provided educational assistance to eligible veterans of the United States Armed Forces in the form of tuition, housing costs, and other education-related costs and fees under the Post 9/11 GI Bill. In addition to traditional degree programs, the VA provided educational assistance to veterans pursuing "non-college degree" ("NCD") programs at "non-institutes of higher learning" ("non-IHL"). The VA was headquartered at 810 Vermont Avenue NW, Washington, D.C.

1

2. Under the Post-9/11 GI Bill, the VA generally paid tuition directly to approved educational institutions, and paid other benefits, such as housing costs, directly to eligible veterans.

3. School Certifying Officials ("SCO") were school-designated officials responsible for submitting enrollment documents for eligible veterans and other documents to the VA, maintain records of veteran students, and make such records available for inspection at any time by the VA.

Relevant Entities

4. Golden Razor Academy of Cosmetology ("GRAC") was a beauty school located at 7209 Turner Lake Road NW Covington, GA 30014. GRAC was a VA-recognized non-IHL that offered NCD programs in, among others, cosmetology, cosmetology instructor, refresher, esthetics, hair design, nail, and massage.

5. Defendant PRICE, a citizen of the United States and resident of Georgia, was an owner of GRAC. PRICE was GRAC's SCO.

6. Defendant Sandra Walden ("WALDEN"), a citizen of the United States and resident of Georgia, was an owner of GRAC.

7. CC-1 was a citizen of the United States and resident of Georgia.

The Conspiracy and Scheme to Defraud

8. Between in or around November 2015 to in or around May 2021, PRICE, WALDEN, CC-1, and others, known and unknown, conspired and engaged in a scheme to defraud the VA, as principals and aiders and abettors, by supplying the VA with false information, including, but not limited to, false information indicating that veterans eligible for Post-9/11 GI Bill benefits were enrolled in specific GRAC courses of study, despite knowing in truth and in fact that the veterans did not attend GRAC classes, to obtain money and property from the VA. As a result of the false and fraudulent misrepresentations, the VA paid approximately $1,924,172 in Post-9/11 GI Bill

tuition benefits to GRAC, and approximately $1,552,120 in Post-9/11 GI Bill education-related benefits directly to veterans.

9. PRICE, WALDEN, and CC-1, working together and pursuant to an agreement among them, recruited dozens of veterans eligible to receive Post-9/11 GI Bill Benefits to attend GRAC. PRICE, WALDEN, and CC-1 falsely told veterans that they would not have to attend class to receive benefits. The veterans were often knowing participants in the scheme and willingly participated with the understanding that they would personally receive Post-9/11 GI Bill Benefits to which they were not entitled.

10. PRICE and WALDEN personally directed thousands of dollars in "recruiting fees" to CC-1 related to the recruitment of veterans to attend GRAC, despite knowing of a statutory prohibition on such recruitment payments.

11. PRICE and WALDEN personally directed additional payments to CC-1, believing that CC-1 was paying approximately two VA officials on their behalf to expedite the VA's payments to GRAC. For example, or about February 21, 2021, CC-1 told PRICE via text message that the VA official wanted more money because he or she had "rushed" a VA payment to GRAC.

12. PRICE and WALDEN received notification from CC-1 when the VA had made certain payments to GRAC. For example, on or about November 7, 2019, referring to a VA payment, CC-1 sent a text message to PRICE that read "[m]y aunt said check it today. Something should've came . If not let me know."

13. As GRAC's SCO, PRICE personally prepared, certified, and submitted to the VA false VA Form 22-1999 enrollment forms for veteran students. The forms that PRICE prepared contained, among other falsities, false addresses for veteran enrollees that made it appear as if the veterans lived near GRAC and were attending classes. For example. PRICE would enter a Georgia address

for a veteran despite knowing that the veteran lived hundreds of miles away, in another state. PRICE created these false documents for the purpose of deceiving the VA, and with the understanding that the VA relied on the false information in authorizing payments to GRAC for the veteran enrollees, and in paying other education-related benefits directly to the veteran enrollees.

14. PRICE personally submitted false forms to the VA false VA Form 22-1999 enrollment forms via the VA Online Certification of Enrollment ("VA-ONCE") computer system, which resulted in interstate wire communications from Georgia to locations outside Georgia. These forms were eventually submitted to the VA in Washington, D.C. PRICE personally submitted approximately 266 VA Form 22-1999s for approximately 72 veteran enrollees.

15. During one recruiting pitch, WALDEN told an individual whom WALDEN believed to be a veteran interested in enrolling GRAC ("Individual 1"): "this is personal, this is between me and you, and it's very secretive, do you intend to do hair or what do you intend to do?" WALDEN stated that other veteran students "can't come to school full-time" and that she "let them come as they need and as they can." WALDEN also asked to enroll Individual 1's spouse, stating, "I can run your [spouse] through here and let [him/her] use [his/her] money too" despite Individual 1's indication that its spouse had no interest in enrolling in GRAC. To induce Individual 1 to provide its spouse's information, WALDEN stated the spouse "wouldn't have to come to school, maybe every once in a while come in, clock in."

16. WALDEN further stated to Individual 1, "VA is going to pay me, and they're going to pay you too…you'll be listed on paper as a full-time student." WALDEN said she would "set no minimum" in terms of required hours of attendance as long as Individual 1 kept the "paperwork up to date."

17. PRICE and WALDEN personally directed veteran enrollees to sign attendance forms and credit hour forms that falsely indicated that the veterans had attended classes. WALDEN told Individual-1, for example, "even on the days you don't come, you would have to fill these out…this is very confidential." WALDEN and PRICE also told Individual-1 that Individual-1 would not need to visit the school every day to complete the attendance and credit hour forms, and that Individual-1 could complete all attendance forms before the course started. WALDEN and PRICE encouraged Individual-1 to complete attendance forms for Individual-1's spouse as well.

18. PRICE and WALDEN told veterans that the VA would not catch on to the scheme to induce them to enroll in GRAC. For example, when Individual-1 expressed concern about getting in trouble, WALDEN stated, "It don't work that way…They don't have time to get on the phone and call people," and PRICE stated, "They don't call ya'll. And they really don't call me either."

19. PRICE and WALDEN maintained these false documents in student files at GRAC to deceive the VA in the event of an audit. PRICE and WALDEN told Individual-1 and other veterans that they might need to complete paperwork after the fact in the event of an audit.

20. PRICE and WALDEN acted knowingly, willfully, and with the intent to defraud the VA.

21. PRICE and WALDEN personally benefitted from the money that the VA paid to GRAC.

22. Between in or around November 2015 and in or around May 2021, GRAC received approximately $1,924,172 in Post-9/11 GI Bill tuition payments for approximately 63 veteran enrollees. These payments were a reasonably foreseeable loss to the VA attributable to the conspiracy and scheme to defraud set forth above.

23. Between in or around November 2015 and in or around May 2021, veterans enrolled in GRAC's courses received approximately $1,552,120 in Post-9/11 GI Bill education-related

benefits. These payments were a reasonably foreseeable loss to the VA attributable to the conspiracy and scheme to defraud set forth above.

                Respectfully submitted,

                JOSEPH BEEMSTERBOER
                Acting Chief, Fraud Section
                Criminal Division
                United States Department of Justice

By:   /s/
                _____
                Michael P. McCarthy, D.C. Bar #1020231
                Trial Attorney, Criminal Division, Fraud Section
                United States Department of Justice
                1400 New York Avenue, N.W.
                Bond Building, Fourth Floor
                Washington, D.C. 20530
                (202) 305-3995
                Michael.McCarthy2@usdoj.gov

## DEFENDANT'S ACCEPTANCE

The preceding Statement of the Offense is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree and stipulate to this Statement of the Offense and declare under penalty of perjury that it is true and correct.

Date: 7-23-21

Candace Price
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it fully with my client. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 7/23/2021

L. Burton Finlayson
Counsel for Candace Price